UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.  Case No. 8:17-CR-283-T-24JSS

BRANDON RUSSELL,
_____/

## INTERESTED PARTY, DEVON ARTHURS', STATEMENT IN SUPPORT OF DEFENDANT'S MOTION TO SEAL VIDEO CLIP EXHIBITS FROM PRETRIAL DETENTION PROCEEDINGS

Devon Arthurs opposes the release of video clip exhibits introduced by the Government during Brandon Russell's Pretrial Detention Proceedings on June 13, 2017 because the release of those videos would violate Mr. Arthur's Constitutional right to a fair trial. Mr. Arthurs has criminal charges pending in the Thirteenth Judicial Circuit of the State of Florida under case number 17-CF-007587A. The videos introduced by the Government during Brandon Russell's pretrial detention proceedings purportedly depict Law Enforcement questioning Mr. Arthurs. The release of these video clip exhibits would violate Mr. Arthurs' rights guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

**Factual Basis**

1. On June 8, 2017, Devon Arthurs was charged by Indictment in the Thirteenth Judicial Circuit of the State of Florida, under case number 17-CF-007587A, with: 1) Murder

in the First Degree, 2) Murder in the First Degree, 3) Kidnapping, 4) Kidnapping, and 5) Kidnapping. On June 12, 2017, Mr. Arthurs entered a plea of not guilty and is awaiting trial.

2. On June 13, 2017, a hearing occurred regarding pretrial detention for Brandon Russell. During the hearing, the Government introduced seven (7) video clips of a Law Enforcement interview of Devon Arthurs.

3. The pretrial detention proceedings were open to the public, the media was present during the proceedings, and local and national media agencies reported on the contents of the video clips played in open court during the proceedings.

4. Both Mr. Arthur's Indictment and Mr. Russell's Complaint and the alleged facts in each case have received extensive media coverage locally in the Tampa Bay area and in the national press.

5. If the video clip exhibits are released, they will almost certainly be publicized by the media.

6. The release of these video clips will severely prejudice Mr. Arthurs and interfere with his ability to select a fair and impartial jury and his ability to receive a fair trial.

7. Once these edited video clips are released there is no remedy which could undo the harm caused to Mr. Arthurs.

**Memorandum of Law**

The decision whether to allow inspection and copying of judicial records is left to the "sound discretion of the trial court, a discretion to be exercised in light of the relevant

facts and circumstances of the particular case." *Nixon v. Warner Communications*, 435 U.S. 589, 599 (1978); *See also Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 429 (5th Cir. 1981). Generally, the public and the press have a right to inspect and copy public records and documents which includes judicial records. *Nixon v. Warner Communications*, 435 U.S. 589, 597 (1978). However, the right to inspect and copy judicial records is not absolute. *Id.* at 598. Neither the public nor the press have a constitutional right of physical access to exhibits introduced into evidence, and this includes the right to copy and broadcast a video played in open court. *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 426-27 (5th Cir. 1981).

The right of access to courtroom records derives from a common law right of access "that predate[s] the Constitution itself." *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 429 (5th Cir. 1981) (citing *United States v. Mitchell*, 551 F.2d 1252, 1260 (D.C. Cir. 1976), rev'd sub nom.; *Nixon*, 435 U.S. 589 (1978)); *See also Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983). This common law right may be curtailed if it "interfere[s] with the administration of justice." *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983).

When deciding whether to allow access to judicial records, a court must consider: 1) the historic presumption of access to judicial records; 2) whether the records are sought for illegitimate purposes as to promote public scandal or gain unfair commercial advantage; 3) whether access is likely to promote public understanding of historically significant events; 4) whether the press has already been permitted substantial access to the contents of the records; and, 5) whether the administrative difficulties would disrupt the progress of trial.

*United States v. Ahmed Abdellatif Sherif Mohamed*, 546 F. Supp. 2d 1299, 1302 (M.D. Fla. 2008) (citing *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983); *United States v. Rosenthal,* 763 F.2d 1291, 1294-95 (11th Cir. 1985)).

The ability of a defendant to "get a fair trial if access is granted is the primary ultimate value to be weighed on the non-access side of the balance." *United States v. Rosenthal,* 763 F.2d 1291, 1295 n.5 (11th Cir. 1985); *See also Wilson v. American Motors Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985) ("The right to a fair trial has, of course, always been recognized as an important, if not paramount, concern in balancing the right of access."). More importantly, when weighing the right to access and a defendant's right to a fair trial "[i]t is better to err, if err we must, on the side of generosity in the protection of a defendant's right to a fair trial before an impartial jury." *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 431 (5th Cir. 1981). Additionally, when the public and media have access to proceedings, the release and broadcast of audio or video tapes "may have more of an inflammatory impact on the viewing public than a mere recounting of the testimony and evidence presented" during the hearing. *United States v. Ahmed Abdellatif Sherif Mohamed*, 546 F. Supp. 2d 1299, 1302 (M.D. Fla. 2008).

In this specific instance the videos introduced during Mr. Russell's pretrial proceedings should be kept under seal because Mr. Arthurs's Constitutional right to a fair trial outweighs the common law right of the public and the media to copy and broadcast video clips played in open court. Mr. Arthur's Constitutional rights are the primary ultimate value in balancing the media's common law right to the access of judicial records. If the

media or the public were permitted to copy and rebroadcast the video clips Mr. Arthurs would be deprived of his Constitutional right to a fair trial before an impartial jury because the broadcasting of the video clips would have a more inflammatory impact on the viewing public than a mere recounting of the evidence presented during the hearing. The media had access to Mr. Russell's pretrial detention proceedings and reported on the video clips that were played in open court, and the media has no Constitutional right to access the records admitted into evidence. Accordingly, this Court should seal the video clips because dissemination and rebroadcasting of the video clips would interfere with Mr. Arthurs' Constitutional right to a fair trial.

WHEREFORE, Devon Arthurs respectfully requests that this Honorable Court enter an Order Sealing Video Clips introduced by the Government during the Hearing on June 13, 2017 regarding Brandon Russell's Pretrial Detention Proceedings until Devon Arthurs pending legal matters are tried before a jury in a court of law.

/s/ Kevin J. Napper
Kevin J. Napper
Florida Bar Number 656062
The Law Offices of Kevin J. Napper, P.A.
604 South Boulevard
Tampa, FL  33606
Telephone No. 813-443-8432
knapper@kevinnapperlaw.com
lgarrett@kevinnapperlaw.com
Counsel for Interested Party Devon Arthurs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing has been electronically filed and served on all parties via CM/ECF on the 16th day of June, 2017.

/s/ Kevin J. Napper
Counsel for Interested Party Devon Arthurs