UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                                    CASE NO. 8:17-CR-283-T-24JSS

BRANDON CLINT RUSSELL

**UNITED STATES' MEMORANDUM OF LAW REGARDING THE
MEDIA'S RIGHT TO ACCESS AND COPY RECORDS**

At the Court's June 13, 2017, hearing on reconsideration of its release order, the United States offered into evidence seven video clips of a voluntary, post-*Miranda*, recorded interview of Devon Arthurs, defendant Brandon Russell's former roommate, which occurred the night of May 19, 2017. The United States played these video clips in open court, in the presence of the public and representatives of the media, and offered them into evidence as government's Exhibits 1 through 7. The Exhibits are currently part of the Court record and are available for the public, including the media, to review and inspect at the Clerk's Office.

Members of the media have sought to intervene in this case to request to access and copy Government's Exhibits 1 through 7. Russell opposes this request on Sixth Amendment grounds. (Docs. 30, 35) Russell correctly advises the Court that this case has already received daily, televised news

coverage. The media have already obtained copies of the other government exhibits entered at the hearing—mostly photographs of the crime scene—and freely published those, as well as reported on the contents of the video clips played in open court. Naturally, if the media obtain copies of the video clips, they will certainly be played and broadcast nationwide.

Russell submits that if these video clips are disseminated, he will be unable to receive a fair trial because he would instead be tried in the court of public opinion. (Docs. 30, 35) Arthurs opposes on the same grounds. (Doc. 37).

The United States recognizes both Russell's and Arthurs's right to a fair trial. In accordance with the Court's directive at the June 13, 2017, hearing, the United States submits this memorandum of law regarding the media's right to access and copy the seven video clips entered into evidence by the United States.

## MEMORANDUM OF LAW

The media's right of access to criminal judicial proceedings is rooted in both the First Amendment and in the common law. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 599 (1978). The First Amendment, however, does not afford the media a right to copy and broadcast a video played in open court. *See Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 426-27

(5th Cir. Aug. 28, 1981)[1]; *Beckham v. Post-Newsweek Stations, Mich., Inc.*, 789 F.2d 401, 406 (6th Cir. 1986); *see also United States v. Boyd*, No. 3:07-cr-00003-TAV-HBG, Doc. 156 (E.D. Tenn. June 13, 2008). Rather, the right to inspect and copy judicial records arises from common law. *See Newman v. Graddick*, 696 F.2d 796, 801 (11th Cir. 1983). "The Eleventh Circuit has recognized that this common law right-of-access is 'important if the public is appreciate fully the often significant events at issue in public litigation and the workings of the legal system.'" *United States v. Mohamed*, 546 F. Supp. 2d 1299, 1301 (M.D. Fla. 2008) (citing *Newman*, 696 F.2d at 801). But this right is not absolute, "and may be curtailed when it 'interfere[s] with the administration of justice.'" *Id.*

    The trial court has the discretion to decide whether to allow the inspection and copying of judicial records, "a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599. The Court can prohibit the inspection and copying of exhibits if the "potential for public benefit [is] less than the potential harm to the fair and orderly administration of justice." *Beckham*, 789 F.2d at 411. Factors that the court should consider are: (1) the historic presumption of access to judicial

---

[1] Decisions of the former Fifth Circuit rendered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

records; (2) the purpose for which the records are sought (including whether to promote public scandal or gain an unfair commercial advantage); (3) whether access is likely to promote public understanding of historically significant events; (4) whether the press has already been permitted substantial access to the contents of the records; and (5) whether the administrative difficulties in providing access would disrupt the progress of the trial. *United States v. Rosenthal*, 763 F.2d 1291, 1294-95 (11th Cir. 1985). But ultimately, a criminal defendant's right to a fair trial tips the scale in favor of non-access. *Id.*; *Mohamed*, 546 F. Supp. 2d at 1301-02.

In determining whether to allow the media to copy exhibits, the defendant's right to a fair trial must be the court's primary concern. "It is better to err . . . on the side of generosity in the protection of a defendant's right to a fair trial before an impartial jury." *Belo*, 654 F.2d at 431. *See also In re NBC Universal, Inc.*, 426 F. Supp. 2d 49, 52 (E.D.N.Y. 2006) (the media's "need for access" must be balanced against competing values, such as the Sixth Amendment right to a jury trial untainted by exposure to irrelevant, prejudicial information).

In this case, the Court should consider that the media had access to the June 13, 2017, hearing and has freely reported on the video clips that the government played in open court. Further, the media can inspect and review

the Exhibits at the Clerk's office. Under the applicable legal standard, this Court should consider whether the copying, distribution, and broadcasting of the video clips would have more of an inflammatory impact on the viewing public than the reporting on the testimony and evidence presented at the hearing has had. *See United States v. McDougal*, 103 F.3d 651, 658 (8th Cir. 1996) (affirming the district court's denial of the release of a video of deposition testimony; noting that the public's interest in gaining access to the recording was marginal because the testimony had already been made visually and aurally accessible in the courtroom and the press had a transcript of the tape); *In re NBC Universal, Inc.*, 426 F. Supp. 2d at 58.

  The law also instructs that this Court should consider the timing of the release of these exhibits in light of the present stage of this case. This case is in a pre-trial posture, as is the State of Florida murder case against Arthurs. Russell was arraigned only a little over a week ago, and the first status conference is several weeks away. Russell has not yet received discovery (and neither has Arthurs in his pending state case). As the defense correctly advises, these cases are receiving almost daily national media attention. Thus, this Court may have reasons to be concerned with the manner in which these video clips will be used at this juncture—especially because it is unclear at this point whether these clips would be admissible at a trial—which could bear on

5

both Russell's and Arthurs's ability to receive a fair trial in a timely manner. *Compare Mohamed*, 546 F. Supp. 2d at 1303 (finding that the copying and broadcasting of tapes was inappropriate because the case was at a sensitive time in the proceedings and could have resulted in the delay of the trial), *with United States v. Trofimoff*, No. 8:00-cr-197-T-24EAJ, 2001 WL 1644230, *3 (M.D. Fla. June 12, 2001) (ordering the release of a recording given that the jury had already been selected and instructed not to look at any media coverage on the case). *See also United States v. Shenberg*, 817 F. Supp. 118, 120 (S.D. Fla. 1993) (delaying the release of tapes admitted into evidence at trial until the jury reached a verdict); *United States v. Eaves*, 685 F. Supp. 1243, 1245 (N.D. Ga. 1988) (releasing portions of tapes admitted into evidence at trial after the close of the evidence).

Moreover, this Court may reconsider in the future whether release may be appropriate, depending on the progression of both cases. *See Mohamed*, 546 F. Supp. 2d at 1303.

Wherefore, the United States respectfully submits this memorandum of law to aid this Court in making a determination as to the media's right to access and copy records at this juncture in this case.

    Respectfully submitted,

    W. STEPHEN MULDROW
    Acting United States Attorney

By:   */s/ Josephine W. Thomas*
    JOSEPHINE W. THOMAS
    Assistant United States Attorney
    Florida Bar No. 31435
    400 N. Tampa Street, Suite 3200
    Tampa, Florida 33602-4798
    Telephone:  (813) 274-6000
    Facsimile:   (813) 274-6358
    E-mail:      josie.thomas@usdoj.gov

U.S. v. Brandon Clint Russell                    Case No. 8:17-cr-283-T-24JSS

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Ian Goldstein, Esq.
    Kevin J. Napper, Esq.

    */s/ Josephine W. Thomas*
    JOSEPHINE W. THOMAS
    Assistant United States Attorney
    Florida Bar No. 31435
    400 N. Tampa Street, Suite 3200
    Tampa, Florida 33602-4798
    Telephone:  (813) 274-6000
    Facsimile:  (813) 274-6358
    E-mail:  josie.thomas@usdoj.gov