**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**           Case No. 8:17-cr-283-T-24JSS

**BRANDON RUSSELL,**

    **Defendant.**
_____/

**O R D E R**

This cause is before the Court on the following: (1) **Defendant's Motion to Seal Video Clip Exhibits from Pretrial Detention Proceedings** (Doc. 30); (2) **Defendant's Motion to Preclude Release of Video Exhibits from Detention Hearing** (Doc. 35); (3) Interested Party, Devon Arthurs', Statement in Support of Defendant's Motion to Seal Video Clips Exhibits from Pretrial Detention Proceedings (Doc. 37); (4) **Times Publishing Company's Motion to Intervene and Memorandum of Law in Opposition to Defendant's Motion to Seal Video Clip Evidence from Pretrial Detention Proceedings** (Doc. 40); and (5) the United States' Memorandum of Law Regarding the Media's Right to Access and Copy Records (Doc. 42). A hearing on these matters was held June 14, 2017.

**I.**

On May 18, 2017, Devon Arthurs ("Arthurs") was arrested by the Tampa Police Department after he confessed to killing two people at an apartment he shared with Defendant Brandon Russell ("Russell") and the two individuals killed. (Doc. 1 at 3). Arthurs now stands

formally accused in state court of two counts of first degree murder and three counts of kidnaping. (Doc. 37). He has entered a plea of not guilty and is awaiting trial. *Id.*

Russell, who was present at the apartment following Arthurs' arrest, was charged by Complaint on May 20, 2017, and subsequently by Indictment on June 7, 2017, with possession of an unregistered destructive device, contrary to 26 U.S.C. §§ 5861(d) and 5871, and unlawful storage of explosive materials, contrary to 18 U.S.C. §§ 842(j), 844(b) and 27 C.F.R. §§ 555.201, *et seq.* (Docs. 1, 14).

Russell is not implicated or charged in the crimes alleged against Arthurs. Rather, the import of the state-court action against Arthurs in this case are the post-arrest statements he made about Russell. On June 13, 2017, in support of its *ore tenus* motion that Russell be detained pending further proceedings in this cause, the government introduced, among other matters, video clips of post-arrest statements made by Arthurs in support of its contention that Russell was a risk of danger to others or the public should he be released on bail. Over Russell's objection, the video clips were admitted and published in open court. *See* Hearing Exs. 1-7.

Since the hearing, the video clips have been available for viewing by the press and the public under procedures established by the Clerk of Court. The statements revealed on the video clips have been disseminated in print, television, and digital media, both locally and nationally.

On or about June 14, 2017, reporters for WFTS and WFLA, two local television stations, made written requests to obtain copies of the video clips.

At issue on the instant motions and pleadings is whether these video clips should be made available to the press for copying and dissemination.

2

**II.**

By his motions, Russell maintains that releasing copies of these video clips will severely prejudice him and interfere with his ability to receive a fair trial. He moves the Court to either seal the video clips (Doc. 30) or preclude their release until after trial (Doc. 35). Arthurs opposes the copying and dissemination of the video clips on the same grounds. (Doc. 37).

By its motion, Times Publishing Company ("the Times") seeks to intervene in these proceedings for the limited purpose of opposing limitations on the media's and the public's right of access to the video clips of Arthurs' post-arrest statements. (Doc. 40). Acting on behalf of itself and other similarly-situated media members, the Times submits its well-crafted memorandum in support, citing the media's and public's First Amendment and common law rights of access to judicial records in criminal cases. It argues that "given the significance of the Court's decision to detain a citizen who is presumed innocent, and the systemic and case-specific values supporting unrestricted access to this key evidence, the Court should permit the public the broadest opportunity to view what the Court viewed, by allowing the news media and public to obtain copies." On the matter of "prejudicial pretrial publicity," the Times argues that research demonstrates "there is insufficient evidence to conclude a causal relationship exists between the news coverage and juror bias," and, in any event, "[b]are assertions (as here made) of 'fair trial rights' do not support closure." It notes that any trial of Russell or Arthurs is a long way off and any publicity generated by release of copies of the video clips will have sufficient time to dissipate. Given the Court's express findings and decision to detain Russell, the Times maintains that the values underlying the First Amendment and common law right of public access – free and fully informed scrutiny and discussion of the Court's decision and the government's handling

3

of the case – compel a ruling permitting the copying and dissemination of the video clips into the public domain. (Doc. 38).

On the Court's request, the government has submitted a memorandum of law regarding the media's right to access and copy the seven video clips at issue. (Doc. 42).

## III.

### A.

As an initial matter, the Times **Motion to Intervene** (Doc. 40) is **GRANTED**.

As for Arthurs' pleading (Doc. 37), the Court construes it, in part, as a motion to intervene for the limited purpose of supporting Russell's motions and opposing the position of the Times. Arthurs' construed motion to intervene (Doc. 37) is **GRANTED**.

### B.

Upon careful consideration of the arguments and governing authority, and for the reasons that follow, **Defendant's Motion to Seal Video Clip Exhibits from Pretrial Detention Proceedings** (Doc. 30) is **DENIED** and **Defendant's Motion to Preclude Release of Video Exhibits from Detention Hearing** (Doc. 35) is **GRANTED**. At present, copies of the video clips introduced during Russell's bail/detention hearing shall not be released to the press or public for dissemination into the public domain. The public and media, however, shall continue to have access and the right to review the video clips under the procedures established by the Clerk of Court. The Times' request to copy and disseminate the video clips is **DENIED without prejudice**, as are the requests made for the same by local television stations WFLA and WFTS.[1]

---

[1]The belated request by Fox 13 News is also **DENIED without prejudice**.

The right of access guaranteed by the First Amendment does not include the right to copy and publish the video clips played at Russell's bail/detention hearing. *See Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 426-27 (5th Cir. 1981).[2] And, in this case, the media has received its full complement of First Amendment rights up to this point in the proceedings. The press has had unfettered access to Russell's bail/detention proceedings and access to all evidence introduced at the hearing, including the opportunity to view the video clips played in open court. Since the hearing, the press has continued to have unfettered access to review the contents of the video clips in the Clerk's Office, and the statements made on the video clips have been widely published. Thus, there have not been restrictions on press access apart from obtaining copies of the video clips, which the constitution does not require. *See id.*

Although the common law right of access may include the right to copy and publish the video clips played at Russell's bail/detention hearing, at this time factors relevant for consideration demonstrate otherwise. The right of access to judicial records and documents pursuant to common law is well established. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *see also Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1015-16 (11th Cir. 1992) (quoting *Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985)). Open judicial proceedings serve many important purposes in a democracy. Among them, "[p]ublic scrutiny of a criminal trial enhances the quality and safeguards the integrity of the fact-finding process, with benefits to both the defendant and to society as a whole." *Newman v. Graddick*, 696 F.2d

---

[2]In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

796, 801 (11th Cir. 1983) (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 569, 606 (1982)). Although the Supreme Court has determined that the First Amendment right of access does not extend to physical access to courtroom exhibits, the right to inspect and copy judicial records is a part of the common law right of access. *See Nixon,* 435 U.S. at 597, 608-10. The right to inspect and copy records, however, is not absolute. *Id.* at 598. "As with any other form of access, it may interfere with the administration of justice and hence may have to be curtailed." *Newman*, 696 F.2d at 803 (citing *Belo Broadcasting Corp.*, 654 F.2d at 429).

The decision of whether to allow inspection and copying of court records is left to the sound discretion of the court, "a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599. When deciding whether to grant a party's motion to seal, the court is required to balance the historical presumption of access against any competing interests. *See Newman*, 696 F.2d at 803 (citing *Belo Broadcasting Corp.*, 654 F.2d at 434). Relevant factors for consideration are whether the records are sought for an illegitimate purpose, whether access is likely to promote public understanding of historically significant events, and whether the press has already been permitted substantial access to the contents of the records. *See id.* (citing *Nixon*, 435 U.S. at 598-603). "Of course, the ability of the defendant to get a fair trial if access is granted is the primary ultimate value to be weighed on the non-access side of the balance." *United States v. Rosenthal*, 763 F.2d 1291, 1295 n. 5 (11th Cir. 1985) (citation omitted).

At present, the historical presumption of access is outweighed by the competing interests urged by Russell and Arthurs. While there is no suggestion of an illegitimate purpose on the part of the media in seeking to obtain copies of the video clips of Arthurs' post-arrest statements, the

broadcasting or other dissemination of the same will undoubtedly prejudice Russell. The video clips played in open court at Russell's bail/detention proceedings, the contents of which have been widely disseminated in the local and national media, depict a small portion of Arthurs' confession to killing his two roommates and sensational statements about Russell's participation in Neo-Nazi groups and alleged intentions to kill people and to use explosive material found at their apartment to blow up structures, such as the Turkey Point nuclear power plant in South Florida. The prejudicial impact of the video clips is undeniable, and in light of the access already provided the media and the public, allowing the copying of the video clips of Arthurs' post-arrest accusations for dissemination to the public would provide only minimal incremental value to the public's understanding of the proceedings against Russell, which accuse him solely of possessing and improper storage of explosive materials. On those charges, it appears highly unlikely that the video clips or any portion of them are admissible as evidence against Russell. Moreover, the video clips, hand-picked by the government to support its claim that Russell was a danger to the community if released, reveal only a small portion of Arthurs' statements and confession and are unchallenged by cross-examination and largely unrevealing as to Arthurs' state of mind and veracity. In these circumstances, the potential prejudice to Russell in releasing copies of the video clips is significant and the incremental benefit to the public is small. Accordingly, all present requests for copies of the video clip exhibits are denied.

**Done and Ordered** at Tampa, Florida, this 21st day of June 2017.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record